IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KAY FLEMING                                                                                   PLAINTIFF

v.                                                              Civil Action No. 1:16-cv-00156-GHD-DAS

JACKSON NATIONAL LIFE INSURANCE COMPANY;
JOHN DOES 1-25
XYZ CORPORATIONS 26-50                                                                       DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Kay Fleming sues Defendant Jackson National Life Insurance Company for denying a life insurance claim she made after her husband's death. Jackson National has moved for summary judgment [34]. Having considered the matter, the Court finds the motion should be granted.

### Background

In June 1984, Jackson National issued a life insurance policy to Curtis and Kay Fleming[1], with both of them being insured under the policy. Def.'s Itemization of Facts [37] ¶ 1[2]; Jackson National Life Insurance Company Policy #061520920 (the "Policy" or "policy") at p. 1[3]. In 1991, the Flemings took out a loan against the loan value of the policy. *Id.* ¶ 5. From 1994 to 1999, they made no payments on either the principal or the interest of the loan, and took out a second loan against the policy. *Id.* ¶¶ 7–11.

In 2000, the accrued interest caused the balance on the loan to exceed the loan value of the policy. *Id.* ¶ 12. Jackson National sent the Flemings written notice that the total loan balance had

---

[1] For clarity, the Court will refer to the Flemings individually by their first names.
[2] These are the itemized facts provided in Jackson National's Statement of Facts to which Kay admitted. *See* Def.'s Itemization of Facts [37]; Pl.'s Resp. to Def.'s Itemization of Facts [42].
[3] Affidavit of Michael Peruchietti [36], Ex. 1.

1

exceeded the loan value, and informed them that they could either terminate the policy or make a loan payment to decrease the balance below the loan value of the policy. *Id.* ¶¶ 13–14. The Flemings made the required payment to reduce the loan balance and keep the policy in effect and continued making premium payments. *Id.* ¶¶ 16–17.

This cycle repeated itself for the next decade. The Flemings would pay premiums but would make no or infrequent payments on the loan; interest would accrue and bring the loan balance above the loan value of the policy; Jackson National would send notice that the Flemings needed to pay down the loan; and the Flemings would make a single loan payment to keep the policy in place. *Id.* ¶¶ 18–35.

On May 11, 2012, Jackson National again sent notice that the loan balance had exceeded the loan value of the policy. *Id.* ¶ 38; Peruchietti Aff., Exhibit 6. The notice stated that the loan balance was $3,248.00 over the loan value of the policy. It further stated that the policy would be automatically terminated if Jackson National did not receive payment within 31 days. *Id.* ¶ 39. Thus, the Flemings had until June 11, 2012 to make the payment.

On June 4, Kay called Jackson National to determine the amount the needed to be paid. *Id.* ¶ 40. During the call, Jackson National extended the due date for the loan payment to July 20, 2012. *Id.* ¶ 41; Peruchietti Aff., Exhibit 7. On June 19 and June 29, Kay called Jackson National again. During both calls, Jackson National informed her that the policy would remain in force as long as the Flemings made the required loan payment. *Id.* ¶¶ 43-49; Peruchietti Aff., Exhibits 8, 10.

The Flemings did not make the loan payment by July 20, 2012, although they did make a premium payment sometime in July. *Id.* ¶¶ 50-51. Curtis passed away on August 23, 2012. *Id.* ¶

2

53. Kay made a claim for the life insurance proceeds from the policy. Jackson National investigated the claim, determined that the policy terminated on July 21, 2012 after the Flemings failed to make the minimum loan payment, and denied the claim. *Id.* ¶ 54.

Kay initiated this action in state court consisting of three claims: (1) bad faith denial of insurance coverage; (2) breach of contract; and (3) breach of fiduciary duty. Jackson National timely removed the matter to this court.

Jackson National now argues that it is entitled to summary judgment because the Flemings did not pay down the loan balance as required by the policy. Kay has responded. The matter is ripe for review.

### Rule 56 Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* Fed. R. Civ. P. 56(a); *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 561 (5th Cir. 2013). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548. "An issue of fact is material only if its resolution could affect the outcome of the action." *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 Fed. App'x 308, 312 (5th Cir. 2016) (per curiam) (quoting *Manning v. Chevron*

*Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002) (internal quotation marks omitted))).

Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The Court "'resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Thomas v. Baldwin*, 595 Fed. App'x. 378, 378 (5th Cir. 2014) (per curiam) (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted)). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Id.* at 380 (quoting *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

## Analysis

### 1. Breach of Fiduciary Duty

Jackson National first argues that there is no dispute that a fiduciary relationship did not exist between it and the Flemings, and therefore no fiduciary duty that could be breached.

Under Mississippi law[4], a claim for breach of fiduciary duty requires the plaintiff show there is a fiduciary relationship between the plaintiff and defendant. *Mabus v. St. James Episcopal Church*, 884 So. 2d 747, 758 (Miss. 2004). As a general rule, there is no fiduciary relationship between an insurer and insured solely by virtue of the fact that there is a contract between the two.

---

[4] Because this case is before the Court pursuant to its diversity jurisdiction under 28 U.S.C. § 1332, state substantive law applies.

4

*Robley v. Blue Cross/Blue Shield of Miss.*, 935 So.2d 990, 995-96 (Miss. 2006) ("The severity of the burdens and penalties integral to a fiduciary relationship should not apply to ordinary insurance policy transactions.") (citing *AmSouth Bank v. Gupta,* 838 So. 2d 205, 216 (Miss. 2002)). The plaintiff must show something more than an "arm's-length business transaction." *Robley,* 935 So.2d at 995. A fiduciary relationship between parties to a contract may exist when:

> (1) the activities of the parties go beyond their operating on their own behalf, and the activities [are] for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.

*Id.* at 995 (quoting *Univ. Nursing Assocs., PLLC v. Phillips*, 842 So.2d 1270, 1274 (Miss. 2003)).

There is no evidence that any elements of a fiduciary relationship are present. This was typical arm's-length business transaction. Because there is no fiduciary relationship between the parties, there is no breach of a fiduciary duty. Jackson National is entitled to summary judgment on this claim.

### 2. Breach of Contract and Bad Faith Denial of Insurance

Jackson National next argues that summary judgment is proper for the breach of contract and bad faith claims because the Flemings did not make the required loan payment by July 20, 2012.

Under Mississippi law, to show a breach of contract, the plaintiff must show (1) "the existence of a valid and binding contract;" and (2) "that the defendant has broken, or breached it." *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012). To maintain a bad faith claim against an insurer, the plaintiff must show the insurer (1) "lacked an arguable or legitimate basis for denying the claim"; (2) "committed a willful or malicious wrong"; or (3) "acted with gross and reckless disregard for the insured's rights."

Jackson National argues that because the Flemings failed to make the loan payment, the policy was no longer in force when Curtis died, and thus it had no contractual duty to pay the claim and a legitimate basis for denying it.

Under the relevant provisions of the policy must make premium payments. If the policyholder fails to make a premium payment, the policy is in default. Policy at p. 3. However, there is a grace period of 31 days of a policy in default for unpaid premiums in which the policyholder may catch up on unpaid premiums. *Id.* The terms of the provision make clear that this grace period applies only to unpaid premiums, not any other money the policyholder might owe.

The policy also provides that the policyholder may take out a loan against the loan value of the policy. *Id.* at p. 9. The loan value of the policy is the "amount shown in the Table of Guaranteed Values for the policy years for which premiums have been paid." *Id.* The policy defines "indebtedness" as "all unpaid policy loans and loan interest." *Id.*

Once the total indebtedness is greater than the loan value of the policy, the policy is due to be terminated. *Id.* ("This Policy will be terminated whenever the total indebtedness equals or exceeds the loan value.") Jackson National must provide written notice that the policy will be canceled because the total indebtedness exceeds the loan value at least 31 days before the policy is terminated. *Id.* Thus, by the terms of the contract, to keep the policy in effect the policyholder, once given notice, must do two things: continue making premium payments *and* make a payment that brings the total indebtedness below the loan value by the date provided in the written notice.

In a situation where the total indebtedness exceeds the loan value, if the excess loan amount were paid off before the termination date, but the policyholder failed to pay the premium, the policy would be in default, but still within a grace period for unpaid premiums for 31 days past the

premium due date. If the insured died within that grace period, the policy would pay its face value less any premiums and other debts owed.

However, if the policyholder did not bring the total indebtedness below the loan value of the policy by the date of termination, the policy is terminated on that date—whether premiums were paid or not. The grace period no longer matters at that point because it only applies to premiums.

The material facts, then, are whether: (1) the total indebtedness exceeded the loan value; (2) Jackson National provided mailed written notice to the Flemings at least 31 days before terminating the policy; (3) the Flemings brought the total indebtedness below the loan value before the termination date; and (4) the premium was paid for the term in which Curtis' died or the policy was within the premium grace period.

Kay disputes that the total indebtedness was greater than the loan value of the policy when she was mailed notice on May 11, 2012. She argues that there was no minimum loan payment due and therefore the policy should not have been terminated.

Jackson National provides the sworn affidavit of employee Michael Peruchietti that, based on his personal knowledge obtained through his employment, the total indebtedness exceeded the loan value by $3,284.00. Peruchietti Aff., ¶¶ 39-41. This is sufficient to establish, for summary judgment purposes, that the total indebtedness exceeded the loan value. *See C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) ("A party's own testimony is often self-serving, but we do not exclude it as incompetent for that reason alone.")

The burden, then, shifts to the plaintiff to provide specific evidence that the total indebtedness did not exceed the loan value on May 11. Kay does not meet this burden. The only purported evidence she provides is a disclosure statement from a completely unrelated annuity purchased

7

from Jackson National. *See* Pl's. Resp. [41], Exhibit 2. It appears plaintiff's counsel has attempted to pass off the minimum guaranteed surrender value of this unrelated annuity as the loan value of the insurance policy. Even if that table provided the loan value of the policy in 2012 (and it does not), it would not, absent other evidence, create a genuine issue of what the total indebtedness was, because it provides no evidence of what the Flemings owed on their loan. Jackson National has presented evidence that the total indebtedness was greater than the loan value. Kay has not rebutted that evidence. There is no factual controversy that the indebtedness exceed the loan value.

Kay also disputes whether Jackson National provided her with notice as required by the policy. Jackson National attached the letter provided to the Flemings which stated that the total indebtedness exceed the loan value by $3,284.00. Peruchietti Aff., Ex. 6. The letter stated that the policy would be terminated if the Flemings did not pay at least that amount within 31 days. Jackson National also attached a file memo stating that it had extended to termination date to pay the excess loan amount to July 20. Peruchietti Aff., Ex. 7.

Kay admits to receiving the letter and being informed about the extension. Pl.'s Resp. to Def.'s Itemization of Facts ¶¶ 38-41. She argues, however, that the letter did not constitute adequate notice under the policy because it did not identify the specific day—July 21, 2012—that her policy was terminated.

The policy did not require Jackson National to inform the Flemings of the exact day the policy would be terminated. Rather, it required Jackson National only to mail notice "at least thirty one days before such termination." Policy at p. 9. As long as Jackson National provided mailed notice to the Flemings, and did not terminate the policy within 31 days of mailing the notice, it complied with the provision. Jackson National mailed notice to the Flemings on May, 11, 2012,

8

which was well over 31 days before the policy was terminated on July 21, 2012. There is no genuine factual issue that Jackson National provided mailed notice in accordance with the policy.

Kay admits that the Flemings did not make the loan payment by July 20. Thus, whether they also made a premium payment was no longer relevant; it was necessary that they make the loan payment. They did not, and so the policy was terminated on July 21.

Because the policy was terminated on July 21, it was no longer in effect when Curtis died on August 23. And because it was no longer in effect, Jackson National no longer had a duty to pay insurance proceeds. Kay cannot prove an essential element of her breach of contract claim: the existence of a contractual obligation. Further, because there was no policy in place at the time of Curtis's death, Jackson National had a legitimate basis for denying the insurance claim. Jackson National is, therefore, entitled to summary judgment on the breach of contract and bad faith denial of insurance claims.

## Conclusion

No fiduciary relationship existed between Jackson National and the Flemings. Further, the Flemings' insurance policy terminated on July 21, 2012. Because the policy was no longer in effect when Curtis passed on August 23, 2012, Jackson National owed no duty to pay out an insurance claim on the policy. Jackson National is entitled to summary judgment on all claims.

An order in accordance with this opinion shall issue.

This, the 14 day of May, 2018.

_____
SENIOR U.S. DISTRICT JUDGE